## In the Matter of the Estate of ERVIN WARDMAN, Deceased.

Surrogate's Court, Westchester County January 14, 1935.

*Scudder, McCoun, Stockton & Kerfoot [Frederic H. McCoun* of counsel], for the trustees.

SLATER, S. The decedent resided in New Rochelle. He made his will in 1916 and died in 1923. He lived in the predepression days when he could figure out what his estate amounted to and he really had such a sum to leave to his beneficiaries.

By the " fourth " paragraph of his will he gave all the rest, residue and remainder of his property to his trustees (1) to convert sufficient of the property into cash as would create a fund of $10,000 for the benefit of his mother; (2) " sufficient of my property shall be converted into cash to create a fund of Two hundred and fifty thousand dollars ($250,000) for the use and benefit of my wife Violet Boyer Wardman, and the income derived from such trust fund of Two hundred and fifty thousand ($250,000) dollars I direct my Trustees to pay to my said wife Violet Boyer Wardman, in semi-annual payments during her life; and upon the death of my said wife Violet Boyer Wardman, I direct my Trustees to pay the income from said trust fund to my son George during his life." Upon the death of the son, George, the remainder is given to other persons.

When the will was made the child was eight years of age. He is now about twenty-three. In due time the trust for the widow was set up. It included the family residence situated in the city of New Rochelle. Later, this real estate was sold and a mortgage was taken back for part payment. The mortgage was reduced. Then came the troublous financial times and, in due course, the mortgage had to be foreclosed. The trustees now have the realty on their hands. As they state in their petition, they are unable to sell or rent it and the yearly taxes are about $1,600 per annum.

The reasonable income upon the trust fund for the widow, when first set up, was probably $10,000 or $12,000. It is now reduced to about $7,500.

The corporate trustee contends that the taxes upon this real estate should be charged to income. The widow, the other trustee, valiantly contends that it should be paid out of principal. The court agrees with the contention of the widow.

The provisions made in the will for the wife, as the testator says, " shall be in lieu of all her dower rights." The primary beneficiary of this trust is the widow. The fact that the son has a succeeding life estate does not enter into the question. The cases are clear on this point. The question may be decided upon several grounds. The will creates an equitable conversion of any real estate that may have become part of the corpus of the trust for the widow. The equitable doctrine that has been developed in *Spencer* v. *Spencer* (219 N. Y. 459, 467); *Lawrence* v. *Littlefield* (215 id. 561); *Matter of Jackson* (258 id. 281); *Matter of Satterwhite* (262 id. 339) and *Matter of Schuster* (150 Misc. 444) can be applied to the instant case. These cases rest upon the assumption that the testator did not intend to improverish or hamper the life tenant with carrying charges for the benefit of the residuary estate.

Again, as to the testator's implied intention. The general rule that the capital of a trust fund should not be impaired by carrying charges (*Spencer* v. *Spencer*, 219 N. Y. 459, 465) cannot be applied in the instant case. It must yield to circumstances. The *net* income is not given. The *income* is given to the widow. The setting up of a trust fund consisting entirely of personal property is evidence that the testator intended that the income should not be depleted. Trusts of personal property should, ordinarily, have no such burden of carrying charges.

Again, the decision in this case can rest upon the conclusion in *Matter of Pitney* (113 App. Div. 845, 847; affd., 186 N. Y. 540) and *Matter of Williams* (148 Misc. 14). In the *Pitney* case we find a similar situation. The court says: " This seems quite unjust to the life beneficiary. It seems to be conceded that no income can

ever be obtained from this unfortunate investment. What is paid to protect this property is clearly for the benefit of principal. It is not in any way to produce income, as the only object of protecting the property is to preserve it so that it can be sold for something which will increase the principal of the trust."

Authorities indicate a liberalizing of the rule which thwarted the testator's purpose by loading carrying charges of unproductive real property on the life tenant although such tenant was obviously the first object of his solicitude so long as she lived. The situation which has developed out of the financial depression will probably soon pass away. When the realty can be sold, the asset will again take its income-producing place along with the other assets of the trust, but in the meantime the purpose of the testator must not be thwarted and his solicitude for the wife must be acknowledged. I hold that the carrying charges of the New Rochelle realty in the hands of the trustees as personalty must be taken from the principal account and not from the income of the trust.

Submit decree in accordance with this opinion and decision.